**Kirk W. Mylander,** OSB No. 993303
Kirk@MylanderLaw.com
**MYLANDER LAW LLC**
4800 Meadows Rd. Suite 300
Lake Oswego, OR 97035
Telephone: (971) 406-4500
Facsimile: (503) 658-9374

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| **RICHARD VAUGHN JR**, | No. 1:26-cv-00988 |
| Plaintiff, | |
| v. | **COMPLAINT FOR VIOLATION OF CIVIL RIGHTS (42 USC 1983) AND SUPPLEMENTAL STATE LAW CLAIMS** |
| **KLAMATH COUNTY**, a political subdivision of the State of Oregon; **ANDREW NICHOLS**, an individual; **KELLY MINTY,** an individual, and **JOHN DOES 1-10**, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

**INTRODUCTION**

1.    This is an action arising from Klamath County's unlawful suspension, discipline, and investigation of Plaintiff Richard Vaughn Jr. ("Plaintiff"), culminating in his termination by the Klamath County Board of Commissioners on January 28, 2026, from his position as the Klamath County Tax Collector.

2.    Before terminating Plaintiff, Defendants suspended him, imposed a gag order, pursued a negligent and retaliatory investigation, and provided only vague, shifting, conclusory, and piecemeal disclosures of what he supposedly did wrong. Yet Defendants repeatedly insisted,

**Page  1 -  COMPLAINT**

MYLANDER LAW
Kirk W. Mylander
4800 Meadows Rd., STE 300
Lake Oswego, OR 97035
Telephone: (971) 406-4500
Kirk@MylanderLaw.com

both in the lead-up to termination and at the public vote, that the Board had "followed applicable policy procedure" and was acting based on a "confidential investigatory file," even as they denied Plaintiff the specific factual allegations and evidence necessary to respond meaningfully.

3.    Despite Plaintiff's repeated efforts to obtain meaningful notice of the charges against him, Defendants never disclosed that in the public termination meeting Commissioner Minty would accuse or imply that Plaintiff could not be trusted with public money and lacked integrity in handling the County's monetary affairs.

4.    At the public meeting where Plaintiff was terminated, Commissioners Nichols and Minty publicly explained on the record why each voted to terminate Plaintiff's employment after Minty read the motion.  The motion stated that the Board reviewed "alleged misconduct by Rick Vaughn the Tax Collector, including an investigator's Executive Summary… the Board finds the evidence supports substantiating violations of County policy regarding conduct and performance standards… be it resolved that we recommend termination of employment for Rick Vaughn the Tax Collector and be it further resolved that this recommendation along with the confidential investigatory file be forwarded to County Counsel to work with Human Resources for final determination and implementation, and further resolved that the proceedings and materials related heretofore remain confidential consistent with applicable Oregon law."

Afterwards, Minty then asked if there was any discussion.  Nichols said yes and then both he and Minty explained why they were voting to terminate Plaintiff.

Nichols stated, "…I find that the trust has been compromised to a degree that makes continued employment unattainable and the board followed applicable policy procedure and for those reasons I support this."

Minty stated, "The public holds um our leadership all employees because all employees are public officials particularly our leadership to very high standards. We govern public money and people um feel very strongly that we do that um with the utmost integrity and they need to have confidence in everything we do. And um so I agree with um the recommended motion."

/ / /

**Page 2 -  COMPLAINT**

**MYLANDER LAW**
**Kirk W. Mylander**
**4800 Meadows Rd., STE 300**
**Lake Oswego, OR 97035**
**Telephone: (971) 406-4500**
**Kirk@MylanderLaw.com**

5. Those statements stigmatized Plaintiff as dishonest, untrustworthy with public money, and corrupt. Those statements were made during the public vote to terminate his employment. The statements were livestreamed and are preserved for public viewing to this day[1].

6. Defendants never provided Plaintiff a meaningful opportunity to clear his name as to that charge.

7. Defendants also retaliated against Plaintiff for protected whistleblowing and other protected activity, including his reports concerning Commissioner Nichols' mismanagement, misconduct, and actions outside the scope of his authority, and/or for Plaintiff's use of the legal system in connection with claims adverse to Klamath County Fire District No. 1.

8. Plaintiff seeks damages, declaratory relief, and appropriate equitable relief.

### JURISDICTION AND VENUE

9. This Court has federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts claims arising under the United States Constitution and 42 U.S.C. § 1983.

10. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's related state-law claims because they form part of the same case or controversy. Plaintiff provided timely notice under ORS 30.275 to the County and Board members on January 30, 2026, describing the time, place, and circumstances and intended claims, and has satisfied any notice requirements applicable to his state-law claims.

11. Venue is proper in this District under 28 U.S.C. § 1391 because the events giving rise to the claims occurred in Klamath County, Oregon.

### PARTIES

12. Plaintiff Richard "Rick" Vaughn Jr. is a resident of Oregon and, at all material times, was employed by Klamath County.

/ / /

---

[1] Klamath County made the video available for public streaming on the County's YouTube channel that same day, where the video remains available to the public: https://www.youtube.com/live/GVHO0GRMEnQ

Page 3 - COMPLAINT

MYLANDER LAW
Kirk W. Mylander
4800 Meadows Rd., STE 300
Lake Oswego, OR 97035
Telephone: (971) 406-4500
Kirk@MylanderLaw.com

13. Defendant Klamath County ("County") is a public subdivision of the State of Oregon and was Plaintiff's employer.

14. Defendant Kelly Minty ("Minty") was, at all material times, a Klamath County Commissioner and a member of the Board of Commissioners. She is sued in her individual capacity.

15. Defendant Andrew Nichols ("Nichols") was, at all material times, a Klamath County Commissioner and a member of the Board of Commissioners. He is sued in his individual capacity.

16. Plaintiff does not yet know the true names and capacities of Defendants Does 1-10, who participated in the acts alleged herein, including County officers, employees, investigators, retained attorneys, agents, and private parties acting in concert with Defendants. Plaintiff will amend this Complaint when their identities are learned.

### FACTUAL ALLEGATIONS

17. Plaintiff was employed by Klamath County in a leadership role as the Klamath County Tax Collector.

18. At all relevant times, Plaintiff had a legitimate claim of entitlement to the continuation of his employment and could not lawfully be terminated except in accordance with constitutionally adequate procedures, including notice of the charges, an explanation of the employer's evidence, and a meaningful opportunity to respond.

19. In or around August 2025, County again suspended Plaintiff, imposed a gag order, and escalated efforts to investigate, isolate, and remove him.

20. Plaintiff engaged in protected activity, including reporting what he believed to be mismanagement, misconduct, unlawful conduct, and/or actions outside the scope of authority by Commissioner Nichols and/or other County actors.

21. Plaintiff's protected activity included reporting what he reasonably believed in good faith was evidence of violations of County rules/policies and/or mismanagement and abuse of authority by County leadership. In approximately June–July 2025, Plaintiff reported to

**Page 4 - COMPLAINT**

MYLANDER LAW
Kirk W. Mylander
4800 Meadows Rd., STE 300
Lake Oswego, OR 97035
Telephone: (971) 406-4500
Kirk@MylanderLaw.com

Commissioner Derrick DeGroot and elected County Clerk Rochelle Long concerns that Commissioner Nichols was acting outside the course and scope of his authority and pursuing County matters based on suspicion rather than proper authority, including Nichols' stated intent to keep digging based on his 'Spidey Sense.' Plaintiff also reported to Commissioner Minty concerns about County mismanagement and waste of public resources, including that the Board was creating a problematic and policy-inconsistent management structure by placing Board staff member Haley Huffman into a 'management position' despite supervising no employees, and that County expenditures and enforcement efforts relating to branding and 'motto' implementation were wasteful and inappropriate for County operations.

22.    Plaintiff also engaged in other protected activity, including use of the legal system in matters adverse to County interests and/or affiliated public actors.

23.    Defendants knew of Plaintiff's protected activity.

24.    After learning of Plaintiff's protected activity, Defendants took and escalated adverse actions against him, including suspension, investigation, a gag order, disciplinary proceedings, and termination.

25.    Defendants pursued and escalated discipline against Plaintiff based on vague, shifting, pretextual, and conclusory allegations.

26.    From January 20 through January 27, 2026, Plaintiff, through counsel, repeatedly demanded charge-level particulars and an evidence explanation keyed to each allegation, including identification of the documents the Board would review, who would present the County's case, who would be present, and whether the Board would limit itself to the allegations actually disclosed in writing.

27.    On January 23, 2026, County Counsel Marcus Henderson refused to continue the pre-disciplinary meeting, asserted that the County 'fails to see where *Loudermill* applies,' characterized the meeting as 'standard (not required) procedure,' and asserted the County found 'no evidence' Plaintiff's position fell outside the County's at-will definition.

/ / /

**Page 5 - COMPLAINT**

MYLANDER LAW
Kirk W. Mylander
4800 Meadows Rd., STE 300
Lake Oswego, OR 97035
Telephone: (971) 406-4500
Kirk@MylanderLaw.com

28.     Plaintiff also demanded confirmation that the Board would not consider any accusation not contained in the County's written notice(s) and disclosures, including any insinuation of theft or dishonesty. Defendants refused to provide such confirmation and refused to identify, in advance, what evidence and materials the Board would consider.

29.     Separately, Plaintiff made a written request under ORS 652.750 for a complete copy of his personnel file and all personnel records used or that had been used to determine termination or other discipline. Human Resources responded by invoking a County policy that contemplates removal of 'notes of legal or disciplinary investigations in progress' before an employee views the file and that 'employee relations or investigation files' are maintained separately, thereby signaling that a curated or 'cleansed' inspection could exclude investigation materials being used to justify termination.

30.     On January 26, 2026, County Counsel provided an 'Executive Summary' and represented in writing that it was 'the item that the Board will review as part of the pre-disciplinary meeting.'

31.     On January 27, 2026, less than 24 hours before the scheduled meeting, County Counsel transmitted a further written disclosure stating that the Board was 'aware of, and may take into consideration,' additional allegations 'being provided out of courtesy,' while reserving privileges and defenses. The additional allegations included, among other things, accusations of intimidation/retaliation, biased and dishonest hiring and supervision, alleged controlled-substance/policy violations arising from a marijuana plant, alleged prior discipline for removing items from a 'crime scene,' alleged contracting circumvention, and alleged name-calling and other inflammatory workplace accusations.

32.     Plaintiff was given only the morning hours before his approximately 2:30 p.m. hearing to prepare a response to the County's after-hours disclosures and late-breaking allegations.

33.     Because Defendants refused to provide timely, specific, and coherent notice of the operative facts, witnesses, evidence, and theory they intended to rely upon, and continued to shift

**Page 6 - COMPLAINT**

MYLANDER LAW
Kirk W. Mylander
4800 Meadows Rd., STE 300
Lake Oswego, OR 97035
Telephone: (971) 406-4500
Kirk@MylanderLaw.com

and expand the accusations up to the eve of the hearing, Plaintiff was denied a realistic opportunity to investigate, marshal rebuttal evidence, and present his side of the story in any meaningful way.

34.    Plaintiff submitted written testimony contesting the County's vague and conclusory allegations and objecting to the County's last-minute disclosures and moving targets, while preserving his objection that any pre-termination process provided was not meaningful.

35.    Defendants nevertheless proceeded to vote publicly on termination, including on an "integrity/public money" rationale that had not been disclosed to Plaintiff as a specific charge and for which Plaintiff was never afforded a meaningful opportunity to clear his name.

36.    The process Defendants provided was illusory: an opportunity to speak without a meaningful opportunity to be heard on the actual evidence and accusations Defendants chose to rely upon.

37.    In context, those statements conveyed to the public that Plaintiff was dishonest, corrupt, or otherwise untrustworthy in the handling of public money or public responsibilities.

38.    Plaintiff contests the truth of that accusation and implication.

39.    Before the public termination meeting, Defendants had never disclosed to Plaintiff that his honesty or integrity regarding public money would be the basis for a stigmatizing public statement or rationale for termination.

40.    The County livestreamed the termination meeting on its YouTube channel and preserved it for continuing public viewing.

41.    As a result of Defendants' statements, the termination itself became stigmatizing in the public eye.

42.    Since Plaintiff's termination, local media commentary and comments on the County's Facebook page have characterized Plaintiff as "corrupt" and dishonest.

43.    Those public reactions reflect the ordinary meaning listeners drew from Defendants' public statements and the stigmatizing rationale Defendants gave for terminating Plaintiff.

**Page 7 -  COMPLAINT**

**MYLANDER LAW**
**Kirk W. Mylander**
**4800 Meadows Rd., STE 300**
**Lake Oswego, OR 97035**
**Telephone: (971) 406-4500**
**Kirk@MylanderLaw.com**

44.     After Plaintiff's termination, and while Defendants continued to treat the investigatory materials as confidential and withheld them from Plaintiff, Plaintiff learned that a pseudonymous Facebook account using the name Thomas Ellis began publishing and circulating County internal documents and accusations about Plaintiff that had not been provided to Plaintiff and were not otherwise publicly available. On information and belief, the Thomas Ellis account obtained those nonpublic materials from a person within Klamath County, an employee, officer, agent, or contractor with access to the County's confidential investigatory file, who provided them for publication to injure Plaintiff's reputation and influence public perception regarding Plaintiff's termination and the underlying County governance controversy.

45.     The Thomas Ellis account published, among other things, an internal memorandum titled "Memorandum of Conversation – Potential Whistleblower Complaint," dated August 21, 2025, reflecting a purported meeting in Commissioner Nichols' office and summarizing accusations about Plaintiff and Plaintiff's relationship with Commissioner DeGroot. The Thomas Ellis account also published an internal memorandum titled "Summary – Hillyard Property Transaction," containing accusations and implications regarding Plaintiff and Commissioner DeGroot.

46.     The Thomas Ellis account republished and adopted the allegations in those internal memoranda as true, repeated additional false statements about Plaintiff, and further asserted that an outside-law-firm investigation led directly to Plaintiff's termination and that Plaintiff's office was at the center of an ethics complaint involving Commissioner DeGroot.

47.     The public accusations and implications described above have harmed Plaintiff's standing in the community and burdened his ability to obtain replacement employment.

48.     Despite publicly stigmatizing Plaintiff in connection with his termination, Defendants have not provided Plaintiff a meaningful public name-clearing hearing.

49.     As of the filing of this Complaint, more than four months have elapsed since Plaintiff's termination and Defendants still have not afforded him a meaningful opportunity, at a meaningful time and in a meaningful manner, to clear his name.

**Page  8 -  COMPLAINT**

**MYLANDER LAW**
**Kirk W. Mylander**
**4800 Meadows Rd., STE 300**
**Lake Oswego, OR 97035**
**Telephone: (971) 406-4500**
**Kirk@MylanderLaw.com**

50.     The Klamath County Board of Commissioners was the final policymaker for the County with respect to Plaintiff's suspension, discipline, termination, and the process provided to him in connection with those actions.

## FIRST CLAIM FOR RELIEF

42 U.S.C. § 1983 – Procedural Due Process (Property Interest)

(Against Klamath County, Minty, Nichols, and Does 1-10)

51.     Plaintiff realleges paragraphs 1 through 50.

52.     Plaintiff had a protected property interest in continued public employment because County rules, policies, and established practices, including Klamath County Personnel Policy 419, created a for-cause disciplinary scheme and mandated pre-disciplinary procedures as prerequisites to serious discipline and termination. Policy 419 requires that notice "shall notify the employee of the factual allegations or charges made, the evidence supporting the allegations or charges." Defendants invoked and relied on those policy procedures in this matter, including by publicly asserting at the termination vote that the Board had 'followed applicable policy procedure' and by adopting a termination motion stating the Board reviewed 'alleged misconduct by Rick Vaughn the Tax Collector, including an investigator's Executive Summary,' that 'the evidence supports substantiating violations of County policy,' and that the termination 'recommendation along with the confidential investigatory file be forwarded to County Counsel to work with Human Resources for final determination and implementation.'"

53.     Defendants deprived Plaintiff of that protected property interest by suspending and then terminating him.

54.     Before depriving Plaintiff of that interest, Defendants were required to provide timely and meaningful notice of the charges, an explanation of the evidence, and a meaningful opportunity to respond.

55.     Defendants were on actual notice that Plaintiff was asserting a property interest, and that constitutionally adequate pre-termination process was required. Nonetheless, on January 23, 2026, County Counsel asserted that Klamath County "fails to see where *Loudermill* applies,"

**Page 9 - COMPLAINT**

MYLANDER LAW
Kirk W. Mylander
4800 Meadows Rd., STE 300
Lake Oswego, OR 97035
Telephone: (971) 406-4500
Kirk@MylanderLaw.com

that the pre-disciplinary meeting is "standard (not required) procedure," and that the County "finds no evidence of Mr. Vaughn's position falling outside the at-will employment definition."

56.    On January 26, 2026, County Counsel reiterated the County's position, writing that Klamath County "disagrees with your assumption that following a procedure that provides for notice and a chance to respond creates a property right," while simultaneously acknowledging that, in *Seater v. Klamath County*, the court "found that the notice letter, meeting opportunity and executive summary satisfied the due process requirements," and providing an Executive Summary on the ground that "This is the item that the Board will review as part of the pre-disciplinary meeting."

57.    Despite the County's invocation and use of Policy 419 procedures (and its prior experience in *Seater*), Defendants failed to provide Plaintiff timely and meaningful notice of the specific factual allegations, the evidence supporting each allegation, and the coherent theory of wrongdoing they intended to rely upon.

58.    Defendants withheld key information until the eve of the hearing, including after-hours disclosures the night before, and refused to provide a charge-level explanation of evidence keyed to each allegation.

59.    Defendants also failed to disclose before the hearing that they intended publicly to accuse or imply that Plaintiff lacked integrity or could not be trusted with public money.

60.    Because Defendants failed to provide timely, specific, and coherent notice of the actual grounds and evidence for termination, Plaintiff was denied a meaningful pretermination opportunity to answer the charges and present his side of the story.

61.    Defendants Minty and Nichols personally participated in the deprivation of Plaintiff's procedural due process rights.

62.    County is liable because the deprivation was carried out by the Board of Commissioners, the County's final policymaker for Plaintiff's termination and the process afforded to him.

/ / /

**Page 10 - COMPLAINT**

**MYLANDER LAW**
**Kirk W. Mylander**
**4800 Meadows Rd., STE 300**
**Lake Oswego, OR 97035**
**Telephone: (971) 406-4500**
**Kirk@MylanderLaw.com**

63.    As a direct and proximate result, Plaintiff suffered economic loss, emotional distress, humiliation, and other damages in an amount to be proved at trial.

## SECOND CLAIM FOR RELIEF

42 U.S.C. § 1983 – Deprivation of Liberty Interest Without Due Process

(Stigma-Plus / Denial of Name-Clearing Hearing)

(Against Klamath County, Minty, Nichols, and Does 1-10)

64.    Plaintiff realleges paragraphs 1 through 63.

65.    Defendants publicly made and published stigmatizing charges and implications against Plaintiff in connection with his termination.

66.    Specifically, Defendants publicly accused or implied that Plaintiff could not be trusted with public money and lacked integrity in matters of public responsibility.

67.    Those charges impugned Plaintiff's honesty and morality.

68.    Plaintiff contests the truth and accuracy of those charges and implications.

69.    Defendants publicly disclosed those charges during the public termination meeting and through the County's livestream and archived video publication.

70.    The charges were made in connection with Plaintiff's termination.

71.    The stigmatizing publication has seriously damaged Plaintiff's reputation, standing, and associations in the community and has burdened his ability to obtain other employment.

72.    Defendants have never provided Plaintiff a name-clearing hearing.

73.    By publicly stigmatizing Plaintiff in connection with his termination while denying him a meaningful opportunity to clear his name, Defendants deprived Plaintiff of liberty without due process of law.

74.    Defendants Minty and Nichols personally participated in that deprivation.

75.    County is liable because the Board of Commissioners, acting as final County policymaker, made the termination decision, published the stigmatizing charges, and failed to provide a name-clearing hearing.

Page  11 - COMPLAINT

MYLANDER LAW
Kirk W. Mylander
4800 Meadows Rd., STE 300
Lake Oswego, OR 97035
Telephone: (971) 406-4500
Kirk@MylanderLaw.com

76.    As a direct and proximate result, Plaintiff suffered reputational injury, emotional distress, humiliation, loss of professional standing, loss of employment opportunities, and other damages in an amount to be proved at trial.

### THIRD CLAIM FOR RELIEF

Whistleblower Retaliation – ORS 659A.199 and ORS 659A.203

(Against Klamath County)

77.    Plaintiff realleges paragraphs 1 through 76.

78.    Plaintiff in good faith reported information that he believed was evidence of violations of law, rule or regulation, and/or evidence of mismanagement, misconduct, abuse of authority, or other unlawful or improper conduct by County and/or its officials.

79.    Plaintiff also disclosed information that he reasonably believed was evidence of violations of law, rule, or regulation by County and/or its officials.

80.    Plaintiff's reports and disclosures included:

(a) In approximately June–July 2025, reporting to Commissioner Derrick DeGroot and elected County Clerk Rochelle Long concerns that Commissioner Nichols was acting outside the course and scope of his authority and engaging in mismanagement in connection with County matters Nichols was pursuing; and

(b) Objecting to Nichols' escalating scrutiny and stated intent to 'keep looking into' matters based on his 'Spidey Sense.'

(c) Reporting to Commissioner Minty multiple instances of County mismanagement and misuse of public resources, including:

i)   The Board's placement of Haley Huffman (Board staff) into a purported management position violated County policy; and

ii)  That County expenditures on branding and 'motto' implementation constituted wasteful and improper use of taxpayer funds.

81.    Plaintiff made these reports in good faith and based on a reasonable belief that the described conduct was evidence of violations of County rules/policies and/or misuse of public

**Page 12 - COMPLAINT**

MYLANDER LAW
Kirk W. Mylander
4800 Meadows Rd., STE 300
Lake Oswego, OR 97035
Telephone: (971) 406-4500
Kirk@MylanderLaw.com

resources and further constituted mismanagement and abuse of authority.

82.    Plaintiff's reports and disclosures were protected activity under ORS 659A.199 and ORS 659A.203.

83.    Defendant County knew of Plaintiff's protected reports and disclosures.

84.    After Plaintiff engaged in protected activity, County subjected him to adverse employment actions, including suspension, investigation, gag orders, discipline, and termination.

85.    County took those actions because of Plaintiff's protected activity.

86.    The proffered reasons for the discipline and termination were false, shifting, pretextual, and/or materially exaggerated.

87.    County's retaliation against Plaintiff was unlawful under ORS 659A.199 and ORS 659A.203.

88.    As a direct and proximate result, Plaintiff suffered economic loss, emotional distress, reputational injury, attorney fees where authorized by law, and other damages in an amount to be proved at trial.

**FOURTH CLAIM FOR RELIEF**

Defamation

(Against John Doe "Thomas Ellis" and John Doe County Accomplices)

89.    Plaintiff realleges and incorporates by reference paragraphs 1 through 88 as though fully set forth herein.

90.    Beginning no later than March 2026 and continuing through at least May 2026, an unknown individual using the false name "Thomas Ellis" (the "Ellis Doe") published a series of posts on Facebook to local audiences, including by posting to and/or sharing into multiple local community groups and/or a Facebook page associated with the alias.

91.    On information and belief, the Ellis Doe acted in concert with and/or received assistance from an unknown employee, officer, agent, or contractor within County (the "County Accomplice Doe") who had access to County-held, nonpublic investigative materials and internal memoranda.

**Page  13 - COMPLAINT**

MYLANDER LAW
Kirk W. Mylander
4800 Meadows Rd., STE 300
Lake Oswego, OR 97035
Telephone: (971) 406-4500
Kirk@MylanderLaw.com

92.    The Ellis Doe published County investigative materials and internal memoranda that Defendants had treated as confidential, including documents that had not been provided to Plaintiff despite his requests for charge-level particulars and the evidence being used to justify discipline and termination.

93.    Among the statements and documents published by the Ellis Doe were:

a)  "On August 21, 2025, two county employees met with Commissioner Andrew Nichols in his office."

b)  "Both employees described concerns regarding Rick Vaughn's conduct and his relationship with Commissioner Derrick DeGroot."

c)  "Their statements, documented in a formal Memorandum of Conversation, paint a picture of a county office operating under pressure and fear."

d)  "Both employees described the tax office as a hostile work environment."

e)  "They said Rick Vaughn made frequent derogatory comments about other county employees."

f)  "In January 2026, Klamath County received an investigative report conducted by an outside law firm. That report led directly to the termination of Rick Vaughn, the county tax collector whose office was at the center of the ethics complaint."

g)  "The termination is believed to be connected to the findings in the report."

94.    The Ellis Doe republished and adopted the assertions in those documents as true, and added further commentary asserting and implying that Plaintiff engaged in misconduct, intimidation, retaliation, and improper use of County resources and information, and that Plaintiff's termination resulted from the outside-law-firm investigation and was connected to alleged ethics violations involving Commissioner DeGroot.

95.    The publications described above contained false statements of fact and false implications about Plaintiff, including statements and implications to the effect that:

**Page  14 - COMPLAINT**

MYLANDER LAW
Kirk W. Mylander
4800 Meadows Rd., STE 300
Lake Oswego, OR 97035
Telephone: (971) 406-4500
Kirk@MylanderLaw.com

a) Plaintiff created a hostile or abusive work environment through frequent derogatory comments about County employees;

b) Plaintiff pressured or intimidated employees and/or caused employees to fear retaliation;

c) Plaintiff directed employees to provide "non-public" foreclosure information or other restricted information to Commissioner DeGroot for personal gain;

d) Plaintiff arranged County processes or used County resources to assist Commissioner DeGroot and/or DeGroot's relatives in acquiring properties;

e) Plaintiff was at the center of, complicit in, or a cause of alleged ethics violations by Commissioner DeGroot; and

f) an outside-law-firm investigative report "led directly" to Plaintiff's termination and that the County was "keeping the results under lock and key," thereby implying that the report substantiated wrongdoing by Plaintiff.

96. The defamatory statements and implications concerned Plaintiff's integrity, honesty, and fitness to perform his profession as the County Tax Collector and a public leader and conveyed to reasonable readers that Plaintiff engaged in serious professional misconduct, misuse of public resources, and abuse of authority.

97. The statements were published to third parties, including members of the County community, in a context reasonably calculated to provoke public condemnation and professional harm.

98. The statements and implications were false. Plaintiff denies and contests the factual assertions and insinuations described above.

99. The Ellis Doe acted at least negligently in publishing false defamatory statements about Plaintiff. Further, because the Ellis Doe published County-held, nonpublic internal memoranda and investigative materials and presented them as proof of Plaintiff's supposed misconduct, the Ellis Doe acted with knowledge of falsity and/or reckless disregard for the truth.

**Page  15 - COMPLAINT**

**MYLANDER LAW**
**Kirk W. Mylander**
**4800 Meadows Rd., STE 300**
**Lake Oswego, OR 97035**
**Telephone: (971) 406-4500**
**Kirk@MylanderLaw.com**

100.    On information and belief, the County Accomplice Doe provided the Ellis Doe with County-held, nonpublic internal memoranda and/or investigative materials, knowing they would be published and used to injure Plaintiff's reputation, and did so with knowledge of falsity and/or reckless disregard for the truth, or at minimum with negligence as to the truth or falsity of the assertions being republished.

101.    The Ellis Doe and the County Accomplice Doe acted with actual malice, in that they published or facilitated publication of defamatory statements and implications with knowledge they were false or with reckless disregard for their truth, and with the purpose of harming Plaintiff's reputation and prospects and/or influencing public perception regarding Plaintiff's termination and County governance controversies.

102.    The publications constitute defamation per se and/or otherwise caused Plaintiff actual damages, including reputational harm, personal humiliation, emotional distress, loss of professional standing, and impairment of employment opportunities.

103.    To the extent the County Accomplice Doe was acting within the course and scope of County employment or agency, Plaintiff has provided notice under ORS 30.275 as alleged above and will further supplement as additional facts and publications become known. To the extent the County Accomplice Doe acted outside the course and scope of any County employment or agency, the County Accomplice Doe is individually liable for his or her tortious conduct.

104.    As a direct and proximate result of Defendants' defamation, Plaintiff has suffered general and special damages in an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A.    For compensatory damages in an amount to be proved at trial;

B.    For damages for emotional distress, humiliation, and reputational harm;

C.    For back pay, front pay, lost benefits, and all other economic losses according to proof;

**Page  16 - COMPLAINT**

MYLANDER LAW
Kirk W. Mylander
4800 Meadows Rd., STE 300
Lake Oswego, OR 97035
Telephone: (971) 406-4500
Kirk@MylanderLaw.com

D.    For declaratory relief that Defendants violated Plaintiff's rights;

E.    For equitable and injunctive relief, including requiring reasonable corrective action to prevent continued publication of stigmatizing integrity-based accusations without an opportunity to clear Plaintiff's name, including (i) posting a corrective statement and/or annotation alongside the County's archived recording of the termination meeting (including in the video description or an equivalent location) making clear that Plaintiff disputes the integrity-based accusations and that no adjudication of dishonesty or corruption has occurred, and (ii) correcting or annotating County-maintained personnel records and investigatory materials to reflect Plaintiff's denial of the stigmatizing accusations;

F.    For punitive damages against the individual Defendants on the federal claims;

G.    For attorney fees and costs, including under 42 U.S.C. § 1988 and as otherwise authorized by law;

H.    For pre- and post-judgment interest; and

I.    For such other and further relief as the Court deems just and proper.

### JURY TRIAL DEMAND

Plaintiff demands trial by jury on all claims so triable.

By: s/*Kirk W. Mylander*
**Kirk W. Mylander,** OSB No. 993303
MYLANDER LAW
kirk@mylanderlaw.com

*Attorneys for Plaintiff*

**Page 17 - COMPLAINT**

**MYLANDER LAW**
**Kirk W. Mylander**
**4800 Meadows Rd., STE 300**
**Lake Oswego, OR 97035**
**Telephone: (971) 406-4500**
**Kirk@MylanderLaw.com**